UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID J. FREEDOM, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CITIFINANCIAL, LLC, JPMORGAN ) <br> CHASE BANK, N.A., EXPERIAN ) <br> INFORMATION SOLUTIONS, INC., and ) <br> EQUIFAX INFORMATION SERVICES, ) <br> LLC, ) <br> ) <br> Defendants. ) | No. 15 C 10135 <br><br> Chief Judge Rubén Castillo |

## MEMORANDUM OPINION AND ORDER

David J. Freedom ("Plaintiff") brings this action against CitiFinancial, LLC ("Citi"), JPMorgan Chase Bank, N.A. ("Chase"), Experian Information Solutions, Inc. ("Experian"), and Equifax Information Services, LLC ("Equifax") (collectively, "Defendants"), alleging violations of the Fair Credit Reporting Act ("the FCRA" or "the Act"), 15 U.S.C. § 1681 *et seq*. (R. 1, Compl.) Presently before the Court is Chase's motion to dismiss Counts I and III of the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (R. 38, Mot.) For the reasons stated below, the motion is denied.

## BACKGROUND

The facts detailed in the 36-page complaint are recounted here only as they pertain to the present motion. Plaintiff is a consumer residing in Illinois. (R. 1, Compl. ¶ 4.) Chase and Citi are both servicers of mortgage loans throughout the country. (*Id.* ¶¶ 5-6.) Equifax and Experian are both in the business of compiling and maintaining files on consumer reports bearing on a consumer's credit worthiness, credit standing, or credit capacity. (*Id.* ¶¶ 7-8.)

In 2006, Plaintiff executed a mortgage loan and note in favor of Chase for $42,242 ("the subject debt"). (*Id.* ¶ 10.) In 2009, Plaintiff refinanced a prior loan via a second mortgage and note in favor of Citi in the amount of $50,315. (*Id.* ¶ 9.) Plaintiff secured both mortgages with real property located in Hazel Crest, Illinois. (*Id.* ¶¶ 4, 9-10.)

In April 2014, Plaintiff filed a Chapter 13 bankruptcy petition in the U.S. Bankruptcy Court for the Northern District of Illinois. (*Id.* ¶ 11.) Both Citi and Chase were listed as creditors. (*Id.* ¶ 15.) Plaintiff's Chapter 13 plan specified that Plaintiff was "surrendering" the Hazel Crest property to Citi and Chase "in full satisfaction of their claims," and that legal title to the property would vest in Citi upon confirmation of the plan. (*Id.* ¶ 19.) On July 31, 2014, the Chapter 13 plan was confirmed by the bankruptcy court. (*Id.* ¶¶ 18, 20.) The confirmation order provided that: "All property of the estate . . . will continue to be property of the estate following confirmation, unless . . . the plan provides for surrender of the property." (*Id.* ¶ 21.)

On November 12, 2014, the bankruptcy court issued an order of discharge as to all of Plaintiff's dischargeable debts, including the subject debt. (*Id.* ¶ 24.) Chase was served with the discharge order two days later. (*Id.* ¶ 26.) The discharge order expressly prohibited "any attempt to collect from the debtor a debt that has been discharged," including any attempt to "contact a debtor by mail, phone, or otherwise, . . . or to take any other action to collect a discharged debt." (*Id.* ¶ 25.)

On September 26, 2014, after the bankruptcy court confirmed Plaintiff's Chapter 13 plan but before the discharge order was issued, Plaintiff sent credit dispute letters via certified mail to credit reporting agencies Equifax, Experian, and TransUnion (another credit reporting agency that is not named in this lawsuit), requesting that his credit file be updated to reflect his approved Chapter 13 plan. (*Id.* ¶ 31.) Plaintiff attached supporting documents from the bankruptcy case

and also requested that these credit reporting agencies activate the Automated Dispute Resolution System program, sending notification of his dispute to the creditors listed. (*Id.* ¶ 32.) While TransUnion responded to Plaintiff's dispute letter by deleting his mortgage line with Chase, both Equifax and Experian responded by stating that Plaintiff's credit report had been updated to reflect his bankruptcy status. (*Id.* ¶¶ 35, 68.) However, both agencies still reported an active balance and a scheduled payment amount on the trade line for the Chase account. (*Id.* ¶¶ 37-38, 70-71.)

On November 19, 2014, after the discharge order was issued by the bankruptcy court, Plaintiff sent a second dispute letter to Equifax and Experian. (*Id.* ¶¶ 40, 73.) Again, the credit reporting agencies responded with assurances that Plaintiff's credit report had been updated, but Plaintiff alleges that they continued to report the Chase trade line as "derogatory." (*Id.* ¶¶ 44-45, 77-78.) Plaintiff sent a final dispute letter to Equifax and Experian on July 10, 2015. (*Id.* ¶¶ 46, 79.) Equifax responded the following month by stating that the Chase trade line had been updated to show that the subject debt was included in bankruptcy. (*Id.* ¶ 50.) Although the outstanding balance amount was changed, the Chase trade line still reported a scheduled payment amount of $143.00. (*Id.* ¶¶ 51-52.) Experian responded on July 22, 2015, by providing Plaintiff with the results of his dispute, from which he noticed a credit inquiry by Chase that occurred after the November 2014 discharge order. (*Id.* ¶¶ 93-95.) The Experian report showed that Chase had requested and received copies of all or portions of Plaintiff's credit information on December 26, 2014.[1] (*Id.* ¶ 95.)

---

[1] Plaintiff alleges in the complaint that the credit inquiries occurred on December 26, 2015, but this appears to be a scrivener's error, because this date would have been *after* the complaint was filed. (*See* R. 1, Compl. ¶ 95.) For purposes of this opinion, the Court uses December 26, 2014, as the operative date. However, the difference is not critical because both dates were after Plaintiff's bankruptcy discharge.

3

Plaintiff alleges that Chase willfully and maliciously acted contrary to the discharge order when it requested his personal credit information by misrepresenting to Experian that he was obtaining credit with the company or that it had a current relationship with him. (*Id.* ¶¶ 96, 101-02.) Plaintiff further alleges that Chase's inaccurate reporting and its failure to either investigate or correct its practices, following receipt of his numerous written dispute letters, continues to have significant adverse effects on him. (*Id.* ¶ 89.) He alleges that Chase's actions have affected his credit rating and his ability to obtain financing, because the incorrect information reported on the Chase trade line creates the false impression that an amount was still owed on the subject debt, rendering Plaintiff a "high-risk consumer." (*Id.* ¶¶ 89-90.) In addition, Plaintiff asserts that he has suffered actual damages resulting from Chase's impermissible pull of his credit file, including "the loss of his right to keep his private financial information confidential, the loss of credit itself, loss of time, harm to his credit rating and other emotional and mental anguish." (*Id.* ¶¶ 106-08.)

On November 6, 2015, Plaintiff filed this action against Defendants alleging multiple violations of the FCRA in connection with these events. (R. 1. Compl.) Chase is named in Counts II and III only. (*Id.*) Count II alleges that Chase violated 15 U.S.C. § 1681s-2 by failing to conduct an adequate investigation after Plaintiff's dispute letters, and by failing to review and correct the information regarding the subject loan provided by Equifax and Experian. (R. 1, Compl. ¶¶ 127-44.) Count III alleges that Chase violated 15 U.S.C. § 1681b(f) by accessing his credit report without a permissible purpose after his debt had been discharged in bankruptcy. (*Id.* ¶¶ 145-56.) Plaintiff seeks actual and statutory damages for these violations, as well as attorneys' fees, costs, and other relief. (*Id.* ¶¶ 144, 156.)

In the present motion, Chase moves to dismiss both counts. (R. 39, Chase's Mem.; R. 53, Reply.) Plaintiff opposes the dismissal of these claims, arguing that he has adequately pled violations of Section 1681s-2 and Section 1681b(f). (R. 51, Pl.'s Resp.)

## LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss challenges the sufficiency of a claim. FED. R. CIV. P. 12(b)(6). To survive dismissal, a complaint must provide enough factual information to "state a claim to relief that is plausible on its face," which raises a "right to relief above the speculative level." *Doe v. Vill. of Arlington Heights*, 782 F.3d 911, 914 (7th Cir. 2015) (citation omitted). Under federal pleading standards, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). This liberal pleading standard is "intended to focus litigation on the merits of a claim rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross,* 578 F.3d 574, 580 (7th Cir. 2009) (citation and internal quotation marks omitted). In considering a Rule 12(b)(6) motion, the Court can consider the complaint, any attachments thereto, and documents referenced in the complaint that are central to the plaintiff's claims. *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013). The Court must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiff. *Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016). However, the Court need not "accept as true any legal assertions or recital of the elements of a cause of action supported by mere conclusory statements." *Id.* (citation omitted).

## ANALYSIS

Plaintiff's two counts against Chase allege violations of Sections 1681s-2(b) and 1681b(f), respectively. The Court discusses each claim separately below.

5

## I. Section 1681s-2

The FCRA was enacted in order to provide accuracy and fairness in credit reporting. 15 U.S.C. § 1681(b). The FCRA seeks to protect consumers by requiring that "consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." *Id.* When a consumer disputes information reported on their credit report by such agencies, the FCRA allows them to file a dispute with the agency, and the agency in turn is required by the FCRA to "provide notification of the dispute to any person who provided any item of information in dispute" by providing them with all relevant information on the dispute. *Id.* § 1681i(a)(1)-(2).

Entities that report consumer information to credit reporting agencies are called "furnishers" of information, which are creditors, lenders, utility companies, and other entities with information about a consumer's credit who send such information to credit reporting agencies. *Id.* §§ 1681a, 1681s-2. The FCRA imposes various duties on furnishers who supply consumer information to credit reporting agencies. *See id.* § 1681s-2(a)-(b); *see also Rollins v. Peoples Gas Light & Coke Co.*, 379 F. Supp. 2d 964, 966-67 (N.D. Ill. 2005) (explaining general requirements that Section 1681s-2 places on furnishers of information). Specifically, Section 1681s-2(b) requires furnishers to conduct a reasonable investigation into the accuracy of information provided to a credit reporting agencies upon receipt of notice from a reporting agency that the consumer disputes the debt. 15 U.S.C. § 1681s-2(b).

Plaintiff claims that Chase violated Section 1681s-2(b) by: (1) failing to conduct an investigation with respect to the disputed information being reported on the Chase trade line,

after receiving multiple requests to do so from Equifax, Experian, and Plaintiff himself; (2) failing to review all relevant information provided by the same parties; (3) failing to modify, delete, or permanently block the inaccurate information on Plaintiff's consumer reports; and (4) failing to report the results of its investigation or reinvestigation to Equifax and Experian after being put on notice and discovering inaccurate reporting of the subject loan. (R. 1, Compl. ¶¶ 132-37.) Additionally, Plaintiff claims that Chase violated Section 1681i(a)(1) by failing to conduct a reasonable reinvestigation of its reporting on the subject loan within 30 days of receiving notice of his dispute. (*Id.* ¶ 138.)

Chase argues that Plaintiff's complaint fails because it does not sufficiently plead that Chase received notice of the disputes and that, even accepting his allegations as true, he does not state a plausible claim for relief under the FCRA. (R. 39, Chase's Mem. at 1, 7-14.) The Court rejects each of Chase's contentions for the reasons stated below.

### A. Sufficiency of Allegations Relating to Chase's Receipt of Notice

The duty to conduct a reasonable investigation imposed on furnishers of information arises only after the furnisher is notified pursuant to Section 1681i(a)(2) by a credit reporting agency that the credit information is disputed. *Rollins*, 379 F. Supp. 2d at 967. In other words, furnishers are accountable under Section 1681s-2(b) only if they continue to supply inaccurate consumer information to reporting agencies after they have received proper notification of a dispute. 15 U.S.C. § 1681s-2(b)(1); *Dornhecker v. Ameritech Corp.*, 99 F. Supp. 2d 918, 925 (N.D. Ill. 2000). Thus, to survive dismissal, a plaintiff must sufficiently allege that a credit reporting agency informed the furnisher of the dispute so as to trigger a duty by the furnisher under Section 1681-2(b). *See, e.g.*, *Ginnan v. Guaranteed Rate, Inc.*, No. 15 C 5813, 2016 WL 302146, at *2 (N.D. Ill. Jan. 25, 2016) ("[S]ome allegation of notice must be provided to show

that a furnisher's duties under FCRA have been triggered."); *Dornhecker*, 99 F. Supp. 2d at 928-29 (FCRA plaintiff's complaint was deficient where he did not include any allegation that the furnisher received notice from a credit reporting agency that the credit information was disputed).

Chase contends that Plaintiff's complaint fails to sufficiently allege that it received notice of his disputes. (R. 39, Chase's Mem. at 7.) In support, Chase relies on *Densmore v. General Motors Acceptance Corp.*, No. 03 C 1866, 2003 WL 22220177 (N.D. Ill. Sept. 25, 2003), in which the court held that an FCRA claim failed where the plaintiff made vague allegations "on information and belief" that the furnisher had notice of his dispute. *Id.* at *2.

As a general matter, it is not improper for a plaintiff to rely on allegations made "on information and belief" in federal court, particularly where "pleadings concern matters peculiarly within the knowledge of the defendants."[2] *Brown v. Budz*, 398 F.3d 904, 914 (7th Cir. 2005) (citation omitted). But Plaintiff provides far more than that here, as he details how Chase received notice through the dispute letters he sent by certified mail to Experian and Equifax. (R. 1, Compl. ¶¶ 35-86.) He also attaches copies of the dispute letters, which not only request an investigation but also request that the letters and attachments be forwarded to the creditors listed on his enclosed bankruptcy schedules. (*See id.*, Exs. M, O, P.)[3] Chase is one of the creditors listed in those schedules. (*Id.*, Ex. M at 12; *id.*, Ex. O at 7; *id.*, Ex. P at 7.) The letters went so far as to state: "If for any reason you decline to send a copy of my letter and the enclosures to any of the creditors, I request that you promptly advise me so that I can take additional steps to protect

---

[2] The Seventh Circuit's opinion in *Bankers Trust Co. v. Old Republic Insurance Co.*, 959 F.2d 677 (7th Cir. 1992)—and cases relying on *Bankers Trust*—are of limited usefulness here: Although in that case the Seventh Circuit found allegations made "on information and belief" improper, *Bankers Trust* involved allegations of fraud, which must be pleaded with particularity under Federal Rule of Civil Procedure 9(b). *Id.* at 679. The Court therefore finds Chase's reliance on this line of cases unpersuasive. *See Lang v. TCF Nat. Bank*, 249 F. App'x 464, 466 (7th Cir. 2007) (Rule 9(b) particularity requirement does not apply to FCRA claims).

[3] These exhibits are considered part of the complaint "for all purposes." FED. R. CIV. P. 10(c).

8

myself." (*Id.*, Ex. M at 3; *id.*, Ex. O at 3; *id.*, Ex. P at 4.) Nothing in the complaint or attachments suggests that these credit reporting agencies advised Plaintiff that they did not forward his letters to his creditors. Indeed, under the FCRA, these credit reporting agencies had a legal duty to notify the furnishers of Plaintiff's credit information about the dispute. 15 U.S.C. § 1681i(a)(2)(A). Plaintiff also attaches the responses he received from Experian and Equifax, which reflect that they received his letters and conducted an investigation in response. (R. 1, Compl., Exs. H, K, N.) The change in Plaintiff's Chase trade line following his third dispute letter further suggests that these credit reporting agencies did in fact provide Chase notice that the subject debt was disputed. (*See id.*, Exs. K, L.)

Construing the complaint and attachments in Plaintiff's favor, he has plausibly alleged that Chase received notice of his dispute so as to trigger a duty under Section 1681s-2(b). *See Lang v. TCF Nat'l Bank*, 249 F. App'x 464, 466-67 (7th Cir. 2007) (observing that heightened pleading standard does not apply to FCRA plaintiff pleading notice to furnisher, and plaintiff who alleged generally that furnisher failed to investigate or correct error after being notified of dispute by credit reporting agency adequately stated a claim under Section 1681s-2(b)); *Souvigny v. Wells Fargo Home Mortg., Inc.*, No. 15 C 07465, slip op. at 9-10 (N.D. Ill. Apr. 15, 2016) (plaintiff's allegations of notice to furnisher were sufficient where he pled that his dispute letters requested that the letters be forwarded to the furnisher); *Ginnan*, 2016 WL 302146, at *3 (plaintiff's allegations that furnisher received notice of dispute were sufficiently plausible based on dispute letters he attached to his complaint showing that he had asked credit reporting agency to notify furnisher).

Chase nevertheless contends that Plaintiff's claim fails because he should have availed himself of Section 1681i(a)(6) before filing suit. (R. 39, Chase's Mem. at 8.) This provision

9

allows consumers to obtain a formal "description of the procedure used [by a credit reporting agency] to determine the accuracy and completeness of the information . . . including the business name and address of any furnisher of information contacted in connection with such information." 15 U.S.C. § 1681i(a)(6)(B)(iii). In Chase's view, Plaintiff was *required* to use this procedure before filing suit to confirm whether Chase was in fact notified of his dispute by Experian and Equifax. (R. 39, Chase's Mem. at 8.) In support, Chase relies on *Densmore* for the proposition that it was "improper for Plaintiff to drag Chase into court" without first using this mechanism. (*Id.*)

The Court is unpersuaded by this argument. As another court recently noted in rejecting this same argument, "*Densmore* did not hold that a § 1681i(a)(6) inquiry was a prerequisite to filing suit . . . . Nor could it, because there is nothing in the statute's text that erects that procedural obstacle before filing suit[.]"[4] *Souvigny*, No. 15 C 07465, slip op. at 10. Indeed, Chase is essentially asking this Court to engraft an exhaustion requirement onto the FCRA that does not exist. *See Ginnan*, 2016 WL 302146, at *3 (rejecting argument that a plaintiff must seek relief under Section 1681i prior to suing in federal court because the FCRA imposes no such duty). Adopting such a rule would also run counter to the liberal pleading standards that apply in federal court generally, and to FCRA claims specifically. *See Brooks*, 578 F.3d at 580; *Lang*, 249 F. App'x at 466-67. Therefore, the Court declines to dismiss on this ground.

**B.    Plausibility**

Chase next argues that this claim must be dismissed because Plaintiff has failed to include allegations that would "allow a reasonable inference that Chase failed to investigate,

---

[4] Another court viewed *Densmore* as "informative as to whether Rule 11 sanctions may be appropriate down the road." *Varnado v. Trans Union, LLC*, No. 03 C 6937, 2004 WL 1093488, at *3 (N.D. Ill. Apr. 29, 2004). The Court agrees with this assessment. If Chase turns out to be correct that "Plaintiff has absolutely no factual basis for the bulk of his claims," (R. 53, Reply at 4 n.1), Chase is free to move for Rule 11 sanctions at a later stage, although the Court offers no opinion about whether such a motion is warranted.

10

report, or correct any purportedly inaccurate information." (R. 39, Chase's Mem. at 8.) The Court again disagrees.

Section 1681s-2(a) of the FCRA prohibits furnishers from reporting information about consumers to credit reporting agencies that the furnisher reasonably believes is incomplete or inaccurate. *See* 15 U.S.C. §§ 1681s-2(a). There is no private right of action for the wrongful reporting itself, *Purcell v. Bank of Am.*, 659 F.3d 622, 623 (7th Cir. 2011), but Section 1681s-2(b) provides a cause of action where a furnisher fails to properly investigate a dispute over whether information it has provided is incomplete or inaccurate. *See, e.g., Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005). In order to prove a claim under Section 1681s-2(b), a plaintiff must establish: (1) that he or she disputed an inaccuracy by notifying a credit reporting agency, (2) that the agency contacted the furnisher to alert it to the dispute, and (3) that the furnisher failed to adequately investigate. *See Westra*, 409 F.3d at 827; *Jackson v. Experian Info. Sols., Inc.*, No. 15 C 11140, 2016 WL 2910027, at *3 (N.D. Ill. May 19, 2016). As discussed above, Plaintiff has adequately alleged that he contacted the credit reporting agencies and that they in turn notified Chase. Dismissal therefore depends upon the sufficiency of Plaintiff's allegations regarding the third element: whether Chase failed to adequately investigate and correct an inaccuracy on Plaintiff's credit report.

Chase contends that its reporting of the subject debt was entirely accurate. (R. 39, Chase's Mem. at 9-10.) As Chase points out, Section 1681c allows bankruptcy cases to be reported for 10 years, and allows accounts that are delinquent or that have been placed for collection to be reported for seven years. (*Id.* at 9 (citing 15 U.S.C. § 1681c(a)(4)-(5).) Chase also points to a report published by the Federal Trade Commission ("FTC") interpreting these provisions and reaffirming that the reporting of a delinquent account, "even if discharged in

11

bankruptcy, may be reported separately for the applicable seven year period, while the existence of the bankruptcy filing may be reported for ten years." FED. TRADE COMM'N, 40 YEARS OF EXPERIENCE WITH THE FAIR CREDIT REPORTING ACT 55-56 (July 2011), *available at* https://www.ftc.gov/sites/default/files/documents/reports/40-years-experience-fair-credit-reporting-act-ftc-staff-report-summary-interpretations/110720fcrareport.pdf. The report also opines that "[a] consumer report may include an account that was discharged in bankruptcy (as well as the bankruptcy itself), as long as it reports a zero balance to reflect the fact that the consumer is no longer liable for the discharged debt." *Id.* at 68.

The report cited by Chase makes clear that, in the FTC's view, a furnisher is not prohibited from reporting a debt that was discharged in bankruptcy so long as the balance amount is corrected to zero. But it does not address whether reporting *additional information* would also be proper under the FCRA. *See Jackson*, 2016 WL 2910027 at *5 ("[T]he Court sees nothing in the FTC's guidance that indicates that if a zero balance is reported for a discharged debt, the report is accurate per se, no matter what or how much additional true, false, or misleading information the report contains.").

As is relevant here, Plaintiff claims that Chase continued to list a "scheduled payment" of $143.00 on his credit report, even after his debt had been discharged in bankruptcy, which in his view was inaccurate. (R. 1, Compl. ¶ 52.) "Inaccurate" information for purposes of the FCRA not only means information that is "factually incorrect," but also information that "create[s] a materially misleading impression." *Saunders v. Branch Banking & Tr. Co. of Va.*, 526 F.3d 142, 148 (4th Cir. 2008); *see also Jackson*, 2016 WL 2910027 at *3 ("Courts have held that 'inaccurate' information, for the purposes of a complaint under the FCRA, includes both factually incorrect information and information that creates a misleading impression."); *Shames-*

12

*Yeakel v. Citizens Fin. Bank*, 677 F. Supp. 2d 994, 1004 (N.D. Ill. 2009) (adopting position that a credit report is "incomplete or inaccurate" within the meaning of the FCRA when it is "misleading in such a way and to such an extent that it can be expected to have an adverse effect on the consumer" (citation and internal quotation marks omitted)).

Plaintiff argues, and the Court agrees, that reporting a "scheduled payment" could create the mistaken impression that Plaintiff still owed on the account, which was not accurate because his debt had been discharged in bankruptcy.[5] *See Jackson*, 2016 WL 2910027, at *5 (denying motion to dismiss Section 1681s-2(b) claim where plaintiff alleged that "even after he disputed the line, it contained information that created the false impression that he was continuing to make payments years after the debt was discharged"). Accepting Plaintiff's allegations as true and

---

[5] To the extent there is a disagreement between the parties, the Court clarifies that the inaccuracy arose after the discharge order was issued, which was after Plaintiff's first dispute letter but before his second and third letters. Plaintiff makes a passing argument that "once Plaintiff's [Chapter 13] plan was confirmed, he was no longer indebted to Chase," such that Chase could no longer report on the debt. (R. 51, Pl.'s Resp. at 11.) He does not cite case law to support this statement, and it does not accord with general bankruptcy principles regarding when a debtor's personal liability on a debt is extinguished. *See Tenn. Student Asist. Corp. v. Hood*, 541 U.S. 440, 447 (2004) ("The discharge order releases a debtor from personal liability with respect to any discharged debt by voiding any past or future judgments on the debt and by operating as an injunction to prohibit creditors from attempting to collect or to recover the debt."); *Johnson v. Home State Bank*, 501 U.S. 78, 84 (1991) (explaining the distinction between *in personam* and *in rem* liability and noting that a bankruptcy discharge extinguishes personal liability only). Nor would it be appropriate to require Chase to try to determine the legal status of Plaintiff's debt based on the specific language of his Chapter 13 plan. *See DeAndrade v. Trans Union LLC*, 523 F.3d 61, 68 (1st Cir. 2008) (holding that plaintiff failed to allege factual inaccuracy in his credit report because the legal status of his mortgage was a "legal issue that a credit agency . . . is neither qualified nor obligated to resolve under the FCRA"); *Johnson v. Trans Union, LLC*, No. 10 C 6960, 2012 WL 983793, at *7 (N.D. Ill. Mar. 22, 2012), *aff'd*, 524 F. App'x 268 (7th Cir. 2013) (observing that FCRA litigation is "not the appropriate way" to resolve a dispute over the legal status of a debt). Notably, Plaintiff alleges in his complaint that his personal liability on the debt to Chase was extinguished not when the Chapter 13 plan was confirmed, but when the discharge order was issued. (R. 1, Compl. ¶ 28.) Thus, the Court is unpersuaded by his argument.

drawing all reasonable inferences in his favor, the Court finds that he has adequately alleged a plausible claim that Chase failed to correct inaccurate information on his credit report.[6]

### C. Sufficiency of Damages Allegations

Chase's final argument as to Count II is that Plaintiff failed to sufficiently allege a causal connection between the purported inaccurate reporting by Chase and any actual damages he suffered. (R. 39, Chase's Mem. at 13-14.) In order to obtain an award of damages, a plaintiff bringing a FCRA claim must allege a causal relationship between the FCRA violation and the loss of credit or some other harm. *Crabill v. Trans Union, L.L.C.*, 259 F.3d 662, 664 (7th Cir. 2001). Plaintiff does that here. Specifically, Plaintiff alleges that as a result of the incorrect reporting by Chase he has suffered "the loss of credit, the loss of ability to purchase and benefit from a credit line," and other damages. (R. 1, Compl. ¶ 90.) Plaintiff asserts that he "has desired to take advantage of credit opportunities" such as credit lines "but has been denied because of the Defendants' failure to report only accurate information" and that the credit decisions were based "in whole or in part on information obtained in reports from Equifax and Experian." (*Id.* ¶ 91.) He further asserts that the inaccurate reporting of the subject debt "create[d] a false impression" that he still owes on the debt, which has rendered him a "high risk consumer" and damaged his creditworthiness. (*Id.* ¶ 89.) He alleges that he has spent time and money making his disputes, tracking their status, and monitoring his credit file. (*Id.* ¶ 90.) These assertions plausibly allege

---

[6] Chase also relies on a recent decision in *Connor v. JP Morgan Chase Bank, N.A.*, No. 15 C 8601 (N.D. Ill. Mar. 22, 2016), and although *Connor* involved similar facts, the claims raised were slightly different. In that case the plaintiff alleged that Chase violated Section 1681s-2(b) because the trade line on his credit report did not specifically state that his account had been discharged in bankruptcy. *Id.*, slip op. at 3. The court found this argument unavailing because the information was clearly included elsewhere in the plaintiff's credit report. *Id.* It does not appear that the plaintiff expressly argued that listing a "scheduled payment" following a bankruptcy discharge was misleading, nor did the court discuss the body of law holding that misleading entries are actionable under Section 1681s-2(b) in analyzing his claim. *See id.* Because of this difference, the Court is not persuaded that *Connor* supports dismissal of this case.

that Plaintiff suffered damages as a result of Chase's actions.[7] *See Souvigny*, No. 15 C 07465, slip op. at 18 (plaintiffs' damage allegations were adequate where they alleged generally that the defendant's actions "contributed to a lower credit score and denials of credit"). Accordingly, the Court declines to dismiss on this ground.

## II. Impermissible Credit Pull Claim

In Count III, Plaintiff alleges that Chase pulled his consumer report for an impermissible purpose in violation of Section 1681b(f). (R. 1, Compl. ¶¶ 153-54.) Specifically, he alleges that Chase had no legitimate business need for his credit report because his bankruptcy discharge ended any business relationship between them. (*Id.* ¶ 152.) Chase argues that this claim fails under the applicable law because the bankruptcy discharge did not automatically terminate their relationship, and further, that it is not a *per se* violation of the FCRA for a creditor to access a debtor's report post-discharge. (R. 39, Chase's Mem. at 14.) Chase alternatively argues that Plaintiff's complaint is factually deficient because Plaintiff fails to allege "any facts showing that he was damaged as a result of any purported impermissible pull" of his credit report. (*Id.* at 15.) For reasons discussed below, the Court rejects Chase's arguments.

### A. Permissibility of the Credit Pull

Section 1681b(f) provides that a consumer's credit report can only be pulled for a purpose authorized by the section itself, and any other inquiry is considered impermissible. 15 U.S.C. § 1681b(f). The FCRA defines a consumer report as "any written, oral, or other

---

[7] Chase repeatedly faults Plaintiff for failing to plead "facts" in support of his claims. (*See* R. 39, Chase's Mem. at 11, 13-14; R. 53, Reply at 9.) It bears repeating that federal courts require *notice* pleading, not fact pleading. *See Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) ("[T]he Supreme Court has signaled on several occasions that it has not amended the rules of civil procedure *sub silentio* to abolish notice pleading and return to the old fact pleading standards that pre-dated the modern civil rules."); *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009) ("Plaintiffs need not lard their complaints with facts; the federal system uses notice pleading rather than fact pleading."). To survive dismissal, a plaintiff is not required to include "detailed factual allegations," and instead "the plausibility requirement demands only that a plaintiff provide sufficient detail to present a story that holds together." *Alexander*, 721 F.3d at 422 (citation and internal quotation marks omitted).

15

communication of any information . . . bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used" to determine that consumer's eligibility for credit or employment purposes. *Id.* § 1681a(d). Section 1681b provides a list of other permissible purposes, such as "to review an account to determine whether the consumer continues to meet the terms of the account," or for some other "legitimate business need . . . in connection with a business transaction." *See id.* § 1681b(a)(3)(A)-(G).

Plaintiff contends that Chase violated Section 1681b(f) when it initiated a credit inquiry with Experian more than month after he had received his discharge in bankruptcy. (R. 1, Compl. ¶¶ 95-96.) Chase argues that the credit pull was proper, citing two out-of-District cases for the proposition that a creditor may access a consumer's credit report even after his debts have been discharged in bankruptcy. (R. 39, Chase's Mem. at 14 (citing *Saumweber v. Green Tree Servicing, LLC*, No. 13-cv-03628 (SRN/SER), 2015 WL 2381131, at *4-5 (D. Minn. May 19, 2015); *Germain v. Bank of Amer., N.A.*, No. 13-cv-676-bbc, 2014 WL 5802018, *6-8 (W.D. Wis. Nov. 7, 2014).) A review of these non-binding decisions reveals that they are distinguishable from the present case.[8]

In *Saumweber,* the court held that a mortgagee bank had a permissible reason to pull a mortgagor's credit report even after his debts had been discharged in a Chapter 7 bankruptcy: notably, they still had an ongoing business relationship because the mortgagor continued to live in the property and make monthly mortgage payments. 2015 WL 2381131, at *1, 4-5. Similarly,

---

[8] It is also worth noting that other courts outside this District have reached the opposite conclusion. *See Barton v. Ocwen Loan Servicing LLC*, Civ. No. 12-162 (MJD/JJG), 2013 WL 5781324, at *2-3 (D. Minn. Oct. 25, 2013) (denying summary judgment for defendant where lender obtained plaintiff's credit report without a permissible purpose after her bankruptcy discharge); *Godby v. Wells Fargo Bank, N.A.*, 599 F. Supp. 2d 934, 942 (S.D. Ohio 2008) (granting summary judgment for plaintiff and concluding that bank did not have legitimate business need for plaintiff's credit report after her mortgage had been discharged in bankruptcy; plaintiff had surrendered the property and bank was prohibited by law from trying to collect on the discharged debt).

in *Germain* the court noted that after a discharge in a Chapter 7 bankruptcy case, a consumer who owes on a mortgage loan is no longer "personally liable for the loan, but . . . still 'owes' the lender in the form of the property (the collateral)." 2014 WL 5802018, at *5. As the court explained:

> [T]he consumer must either make new arrangements with the lender to keep the property, return it to the lender or wait for it to be foreclosed upon. Thus, until the borrower fulfills his debt, he has a credit relationship in the form of an obligation to the lender, even after discharge.

*Id.*

In contrast, Plaintiff alleges that his Chapter 13 plan conferred any interest he had in the Hazel Crest property to Citi in full satisfaction of his debt. (*See* R. 1, Compl. ¶¶ 16-19.) Plaintiff's Chapter 13 plan was confirmed on July 31, 2014, and pursuant to the plan, legal title to the property vested in Citi as of the date of confirmation. (*Id.* ¶¶ 19-21.) Plaintiff's debts were then discharged in bankruptcy, and Chase was prohibited by the terms of the discharge order from contacting Plaintiff or otherwise taking any steps to collect on the debt. (*Id.* ¶ 25.) It can be plausibly inferred from these allegations that Plaintiff no longer had a business relationship with Chase on December 26, 2014, when Chase accessed his credit report. Further factual development may show that Chase had some permissible reason to pull Plaintiff's credit report on that date, but at this stage, the Court must accept Plaintiff's allegations as true. He properly alleges that Chase accessed his credit report without a permissible reason to do so, and accordingly, dismissal is not warranted.

### B. Sufficiency of Alleged Damages

Chase alternatively argues that Count III should be dismissed because Plaintiff failed to allege any causal connection between the credit inquiry and any actual damages he suffered. (R. 39, Chase's Mem. at 14-15.) However, Plaintiff has alleged a *willful* violation of Section

17

1681b(f), (R. 1, Compl. ¶ 153), and a plaintiff may recover either actual or statutory damages for willful violations of the FCRA. 15 U.S.C. § 1681n(a); *Souvigny*, No. 15 CV 07465, slip op. at 19-21. Thus, Plaintiff does not have to plead or prove actual damages to recover for a willful violation. *See Martin v. Asset Acceptance, LLC*, No. 11 CV 6256, 2012 WL 3042524, at *4 (N.D. Ill. July 25, 2012) (observing that a claim alleging a willful violation of the FCRA "does not require proof of actual damages, as the plaintiff may also recover statutory damages"); *see also Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 953 (7th Cir. 2006) ("That actual loss is small and hard to quantify is why statutes such as the Fair Credit Reporting Act provide for modest damages without proof of injury.")

The question then becomes whether Plaintiff has adequately alleged that Chase committed a willful violation of the FCRA, as Chase argues that his allegations are deficient. (*See* R. 53, Reply at 9-10.) "Willful" in this context means "recklessness—something more than negligence but less than knowledge of the law's requirements." *Murray v. New Cingular Wireless Servs., Inc.*, 523 F.3d 719, 726 (7th Cir. 2008). The standard for willfulness is an objective one, and a corporate entity liked Chase will be liable if the plaintiff "shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* (citation omitted).

Plaintiff alleges that Chase "intentionally represented to Experian that Plaintiff was attempting to obtain credit with it, had a current credit relationship, or ha[d] a current business relationship with the Plaintiff" in order to secure a copy of Plaintiff's credit report. (R. 1, Compl. ¶ 96.) Plaintiff further contends that "[i]t is Chase's standard business pattern and practice to illegally access consumer reports under false pretenses," and that "[d]espite numerous disputes complaining about illegal access to consumer credit reports, Chase intentionally and knowingly

18

failed to correct their policy of accessing these reports under false pretenses." (*Id.* ¶ 100.) Plaintiff has thus alleged far more than mere carelessness; accepting his allegations as true, he has alleged a plausible claim that Chase committed a willful violation of the Act. *See Asufrin v. Roundpoint Mortg. Servicing Corp.*, No. 15 C 9077, 2016 WL 1056669, at *5 (N.D. Ill. Mar. 17, 2016) (plaintiff adequately alleged willful violation of FCRA where she claimed that furnisher "acted with reckless disregard" when it was informed of errors in her credit report several times yet failed to correct them); *Solimen v. Morton Coll.*, No. 13 C 1962, 2013 WL 4805004, at *3 (N.D. Ill. Sept. 9, 2013) (plaintiff adequately stated a claim for willful noncompliance where he alleged that defendant "uniformly fails" to follow the FCRA). Plaintiff does not need to allege actual damages to sustain this claim.

Plaintiff claims in the alternative that Chase *negligently* violated the FCRA, (R. 1, Compl. ¶ 154), and Chase is correct that actual damages need to be alleged to support this alternative claim. *See generally* 15 U.S.C. § 1681o. But Plaintiff does in fact allege actual damages. Specifically, he claims that the credit pull resulted in an invasion of his privacy as well as "the loss of credit itself, the loss of time, loss of sleep, harm to his credit rating, and other emotional and mental anguish." (R. 1, Compl. ¶ 156.) This case is thus distinguishable from *Smith v. LexisNexis*, No. 12-cv-8872, 2013 WL 2251771 (N.D. Ill. May 22, 2013), cited by Chase, in which the court found the plaintiff's complaint deficient. Other than providing the dates of the alleged infractions, the complaint was "completely devoid of any other facts pertaining to the alleged conduct or the damages Plaintiff incurred as a result." *Id.* at *3. As to damages, the plaintiff did not include "even the slenderest of allegations" to support his request for actual damages, "such as by alleging that he was denied or lost credit or was subjected to a higher interest rate" because of the defendant's conduct. *Id.* (citation and internal quotation

19

marks omitted). By contrast, Plaintiff has made these allegations here. Therefore, the Court declines to dismiss Count III on this ground.

## CONCLUSION

For the foregoing reasons, Chase's motion to dismiss (R. 38) is DENIED. The parties are directed to reevaluate their settlement positions in light of this opinion and to exhaust all efforts to settle this case. The parties shall appear for a status hearing on August 31, 2016, at 9:45 a.m.

ENTERED: _____

Chief Judge Rubén Castillo
United States District Court

**Dated: July 25, 2016**